Anthony **WILLOUGHBY,**
Appellant–Petitioner,

v.

**STATE of Indiana, Appellee–
Respondent.**

No. 49A02–0302–PC–134.

Court of Appeals of Indiana.

July 29, 2003.

Transfer Denied Sept. 18, 2003.

Daniel M. Grove, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Anthony Willoughby ("Willoughby") filed a petition for post-conviction relief in Marion Superior Court. The post-conviction court denied Willoughby's petition, and Willoughby appeals raising one issue, which we restate as whether errors committed by Willoughby's trial counsel materially affected Willoughby's decision to plead guilty. Concluding that Willoughby failed to meet his burden of demonstrating that his counsel's errors materially affected his decision to plead guilty, we affirm.

### Facts and Procedural History

On September 8, 1989, the State charged Willoughby with one count of burglary, as a Class C felony, one count of theft, as a Class D felony, and three counts

of auto theft, as Class D felonies. The charges arose from an incident in which Willoughby, and several accomplices, broke into an auto lot, stole equipment, and stole three vehicles. Willoughby's accomplices escaped; Willoughby did not.

During plea negotiations, Willoughby's trial counsel failed to inform him that, due to Indiana's single larceny rule, he could not be convicted of three of his four pending theft charges. Furthermore, the trial judge instructed Willoughby that had he gone to trial and been convicted on all counts, the court could have sentenced him consecutively on all counts. Ex. A pp. 7–8.

On May 18, 1990, Willoughby signed a plea agreement. The agreement's terms required Willoughby to plead guilty to one count of burglary, as a Class C felony, plead guilty to one count of auto theft, as a Class D felony, and to testify against John Farrer—one of his accomplices. In exchange, the State agreed to dismiss Willoughby's remaining theft charges—as though it had a choice—and to cap his possible sentence to four years. The trial court accepted Willoughby's plea and sentenced him to four years for burglary, as a Class C felony, and 545 days for auto theft, as a Class D felony, with the two sentences to run concurrently.[1]

On July 30, 1999, Willoughby filed a pro se petition for post-conviction relief, which was amended by counsel on April 30, 2002. Willoughby's petition claims that, as a consequence of his trial counsel's failure to properly inform him of the single larceny rule, his plea agreement was not knowing, voluntary, or intelligent.

Willoughby's post-conviction hearing was held on July 5, 2002. During this hearing, Willoughby admitted that he committed the crimes and did not contest his guilt. Willoughby's contention was that he would not have accepted the offered plea had he properly been informed of the single larceny rule. The post-conviction court denied Willoughby's petition on the basis that Willoughby failed to meet his burden of proving that the erroneous information given by his trial counsel materially affected his decision to plead guilty. Willoughby now appeals.

**Standard of Review**

In post-conviction proceedings, the petitioner bears the burden of proving that he or she is entitled to relief by a preponderance of the evidence. *Walker v. State,* 779 N.E.2d 1158, 1160 (Ind.Ct.App. 2002), *trans. denied* (citing *Moody v. State,* 749 N.E.2d 65, 67 (Ind.Ct.App.2001), *trans. denied*). When appealing a denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Harrison v. State,* 707 N.E.2d 767, 773 (Ind.1999). On appeal, we neither reweigh the evidence nor judge the credibility of the witnesses. *Walker,* 779 N.E.2d at 1160. In order to prevail, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law." *Moody,* 749 N.E.2d at 67.

**I. The Classification of Willoughby's Claim**

"If a [post-conviction] petition cites independent evidence controverting the record of the plea proceedings and supporting a claim of intimidation by an exaggerated penalty, it may state a claim." *Segura v. State,* 749 N.E.2d 496, 504 (Ind.

---

1. Willoughby had a prior conviction and was     on probation at the time of the plea.

2001). In an era predating a developed body of ineffective assistance law, this error has been held to create a factual issue as to whether the plea was voluntary. *Id.* (citing *Dube v. State*, 257 Ind. 398, 275 N.E.2d 7 (1971)).

> Whether viewed as ineffective assistance of counsel or an involuntary plea, the post-conviction court must resolve the factual issue of the materiality of the bad advice in the [petitioner's] decision to plead, and post-conviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the post-conviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

*Id.* Thus, it is immaterial whether Willoughby's claim is of an involuntary plea or ineffective assistance of counsel. Under either standard, Willoughby must demonstrate that the intimidation resulting from his trial counsel's failure to inform him of the single larceny rule was material to his decision to plead guilty.

## II. The Different Ineffective Assistance Standards Contained in *Segura*

*Segura* revisited the appropriate showing required by a defendant upon a review of a claim of ineffective assistance of counsel following a guilty plea. *Segura* created two categories of claims and enunciated different treatments of each respective category, depending upon whether the ineffective assistance allegation related to (1) an unutilized defense or failure to mitigate a penalty, or (2) an improper advisement of penal consequences. *Id.* at 507. *Segura* further divided the "penal consequences" category into two sub-categories. The first sub-category—which governs the case at bar—concerns claims of intimi-

dation by exaggerated penalty or enticement by an understated maximum exposure. *Id.* at 504–05. The second sub-category—which governed the outcome of *Segura*—concerns claims of incorrect advice as to the law. *Id.* at 504.

As mentioned above, the standard for granting post-conviction relief based on a claim of intimidation by an exaggerated penalty—resulting from trial counsel's error—is whether the petitioner can show that his or her decision to plead guilty was induced by the alleged error. Because the application of this sub-category's standard was not enunciated by *Segura*, it is necessary to examine the other category and sub-category of *Segura* to determine how to properly apply the above standard.

### A. The "failure to raise a defense" category

■ When a post-conviction allegation of ineffective assistance relates to trial counsel's failure to raise a defense or mitigate a penalty, *Segura* requires that the prejudice from the omitted defense, or failure to mitigate a penalty, be measured by (1) evaluating the probability of success of the omitted defense at trial or (2) determining whether the utilization of the opportunity to mitigate a penalty likely would produce a better result for the petitioner. *Id.* at 499.

*Segura* noted that, initially, the "omitted defense/failure to mitigate" standard was "whether there was a reasonable probability the petitioner would not have pleaded guilty and would have proceeded to trial but for the error." *Id.* at 501. *Segura* then noted that the cases that applied this standard failed to address how such a showing can be made. *Id. Segura* accurately labeled the prior appellate process of applying this standard a "mantra"—a mystical formula of invocation and incantation. *Id.*

*State v. Van Cleave,* 674 N.E.2d 1293 (Ind.1996), overruled this line of cases by holding that in order to set aside a conviction because of an attorney's failure to raise a defense, a petitioner who has pled guilty must establish that there is a reasonable probability that he or she would not have been convicted had he or she gone to trial and utilized the omitted defense. *Id.* at 1306. *Segura,* in relation to errors of omitted defenses or failures to mitigate a penalty, reaffirmed *Van Cleave's* holding. *Segura,* 749 N.E.2d at 499.

### B. *The incorrect advice as to law sub-category*

■ As to the penal consequences' sub-category of "incorrect advice as to the law," *Segura* requires a petitioner to establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to his or her decision to plead. *Id.* at 507. Merely alleging that the petitioner would not have pled had the correct advice been given is insufficient. *Id.* "Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea." *Id.* Consequently, analysis under this sub-category must focus on the specific facts proffered by the petitioner, which indicate that a reasonable defendant would have rejected the petitioner's plea had the petitioner's trial counsel performed adequately.

### C. *The "intimidation by way of exaggerated penalty" sub-category*

■ The sub-category of *Segura* that governs the case at bar—intimidation by way of exaggerated penalty—includes no analysis as to how to determine whether a petitioner would have pled guilty had the error of his or her trial counsel not been committed. In the absence of guidance from our supreme court, we believe that this sub-category's inclusion under *Segura's* "penal consequences" category indicates our supreme court's desire to utilize the "claims of incorrect advice as to the law" sub-category's standard. Consequently, we hold that when an error in advice supports a claim of intimidation by exaggerated penalty, a petitioner must establish specific facts that lead to the conclusion that a reasonable defendant would not have entered a plea had the error in advice not been committed.[2]

### III. Application of the Standard

■ Segura claimed that his trial counsel erred by failing to inform him that he could be deported if he pled guilty. *Id.* at 498. However, Segura failed to show that he had a defense that had a probability of succeeding at trial, and Segura's consequence of deportation would have weighed equally had he been convicted at trial or had been convicted by way of plea agreement. *Id.* at 499. These facts failed to demonstrate that a reasonable defendant would have rejected Segura's plea had he or she been informed of the possibility of deportation.

**2.** As Justice Sullivan notes in his concurrence, both he and the majority agree that "the petitioner has the burden of demonstrating a reasonable probability that the hypothetical reasonable defendant would not have pled guilty and elected to go to trial if properly advised." *Id.* at 509. We believe it is important to note that neither the majority nor the concurrence uses a definite article to modify "plea." We should and do, therefore, focus on whether a reasonable defendant would have pled guilty to the penalty bargained for rather than concentrating on the exact negotiations and terms of the plea agreement at issue.

Willoughby's proffered specific facts differ in at least one very important respect from Segura's. Willoughby is not asserting that he would have succeeded at trial—indeed, he admits to having committed the crimes. Rather his claim appears to be that, had he not been intimidated by the multiple larceny counts, he could have received a better result/plea agreement if he had been able to "call" the prosecutor as to the illusory aspect of the offered plea and simultaneously threatened to withdraw his agreement to testify against John Farrer if not offered a non-illusory plea. We disagree.

If Willoughby's claim that he had received "no" consideration in exchange for his plea agreement was true or, perhaps, had he received less consideration in exchange for his plea agreement, we might be open to Willoughby's argument. However, under the facts of this case, we believe that, not only would Willoughby have wished to avoid trial, he could have expected nothing substantially better than his sentence under the plea bargain, with a high degree of exposure to a much harsher sentence.[3] For all these reasons, we conclude that Willoughby has failed to meet his burden of establishing that a reasonable defendant in his situation would have rejected a plea had he or she been properly informed of the single larceny rule.[4]

---

**3.** Had Willoughby gone to trial and been convicted, in light of his prior criminal history and the fact that he was on probation at the time he committed the offense, he might well have received aggravated consecutive sentences of as much as eleven years rather than his plea agreement's presumptive sentence of four years. Tr. p. 94; Defendant's Ex. A. p. 19.

**4.** Willoughby also asserts that *Smith v. State*, 770 N.E.2d 290, 296 (Ind.2002), entitles him to relief. Br. of Appellant at 6. Although Willoughby is correct in noting that *Smith*

## Conclusion

Willoughby has failed to meet his burden of establishing that his lack of knowledge concerning the single larceny rule was material to his decision to plead guilty.

Affirmed.

KIRSCH, J., and MAY, J., concur.

invoked *Segura* and the single larceny rule while reducing the post-conviction petitioner's sentence, unlike the case at bar, the post-conviction petitioner in *Smith* was actually *convicted* of multiple theft charges and, consequently, *Smith* reduced the post-conviction petitioner's sentence by way of the "impairs a defense" prong of *Segura*. *Smith*, 770 N.E.2d at 295. Because the case at bar is governed by the "penal consequences" prong of *Segura*, *Smith's* holding is of no benefit to Willoughby.